## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Cardiovascular Systems, Inc., | Case No. 20-CV-1043 (SRN/KMM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Gary Petrucci and Lela Nadirashvili, | |
| Defendants. | |

Daniel L. Allender and Roman M. Silberfeld, Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067; Thomas F. Berndt, Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for Plaintiff.

Joseph W. Anthony and Daniel R. Hall, Anthony Ostlund Baer & Louwagie PA, 90 South Seventh Street, Suite 3600, Minneapolis, MN 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter comes before the Court on Defendant Gary Petrucci's Motion to Dismiss [Doc. No. 15] and Defendant Lela Nadirashvili's Motion to Dismiss [Doc. No. 22]. For the reasons set forth below, the Court **GRANTS** both motions.

## I.    BACKGROUND

### A.  The Parties

Plaintiff Cardiovascular Systems, Inc. ("CSI") is a Delaware corporation with its principal place of business in Minnesota. (Compl. [Doc. No. 1] ¶ 1.) As a medical device company, it owns various intellectual property rights associated with orbital atherectomy devices, utilized to remove built-up plaque in patients' arteries. (*Id.* ¶ 9.) Defendant Ms.

Lela Nadirashvili ("Nadirashvili") is the widow of Dr. Leonid Shturman ("Shturman"). (*Id.* ¶ 16.) Shturman was the former CEO of CSI's predecessor and an employee of CSI prior to his death in 2009. (*Id.* ¶¶ 8-9, 15.) Defendant Gary Petrucci ("Petrucci") was a member of CSI's board, served as CSI's interim CEO, and ultimately founded Cardio Flow, Inc. (*Id.* ¶¶ 16-17.)

### B.  The Events Leading to the 2012 Settlement Agreement

Shturman, an inventor in the field of atherectomy devices utilizing counterweight technology, and Plaintiff CSI vigorously disputed the ownership of this technology, referred to in this Complaint as Shturman's "Counterweight Invention," in court and in arbitration for years prior to his untimely death in 2009. (*Id.* ¶¶ 11-15 (describing the 2008 "SMS Arbitration Award" and the 2008 "Shturman Settlement Agreement").) As defined in the Shturman Settlement Agreement, his "Counterweight Invention" was "certain know how comprised of one or more counterbalanced weights on or near the abrasive element of the drive shaft" of an atherectomy device. (*Id.* ¶ 13.)

Just prior to his death in 2009, Shturman filed another lawsuit against CSI, in an effort to finally resolve the disputed ownership of certain patents and patent applications related to this technology. (*Id.* ¶ 15.) CSI alleges that after Shturman' s death, Petrucci, in an effort to enrich himself at CSI's expense, contacted Shturman's widow, Nadirashvili, and proposed to her that Petrucci leave CSI and that, together, they form a new company, Cardio Flow. (*Id.* ¶ 17.) According to CSI, Petrucci's purpose and intent in starting up Cardio Flow was to take control of the patents and patent applications that Shturman left behind in order to be able to develop an atherectomy device using CSI's technology. (*Id.*)

2

Nadirashvili agreed to the proposal and Cardio Flow was organized in July of 2010, although it did not become operational until several years later. (*Id.*)

As part of Petrucci's alleged plan to gain control of this technology, CSI contends that Petrucci arranged for Nadirashvili to act as a "nominal plaintiff" in a new lawsuit she filed against CSI in 2012. (*Id.* ¶ 19.) The 2012 lawsuit again sought to resolve the disputed ownership of certain patents and patent applications related to this technology. (*Id.*) CSI alleges that Petrucci controlled Nadirashvili's role in the 2012 lawsuit and orchestrated the events leading to the resolution of the lawsuit in the 2012 Settlement Agreement. (*Id.*) As an example of Petrucci's alleged control, CSI alleges that the lawsuit was drafted, filed, and litigated by Petrucci's personal attorneys, who were acting at his direction. (*Id.*) Further, CSI contends that Petrucci directed his personal attorneys to litigate this action on Nadirashvili's behalf at no cost to her. (*Id.*) CSI contends that, although it understood that Nadirashvili and Petrucci were exploring a business relationship together, it did not learn of the extent of Petrucci's control over Nadirashvili during the pendency of the 2012 lawsuit until 2019, during discovery in a related action. (*Id.* ¶ 20.)

### C. The 2012 Settlement Agreement and Subsequent Assignment of the Nadirashvili Patent Portfolio to Cardio Flow

The 2012 Settlement Agreement fully resolved the 2012 lawsuit in several key respects. First, the disputed patents and patent applications were divided between CSI and Nadirashvili into patent portfolios—the "CSI Patent Portfolio" and the "Nadirashvili Patent Portfolio." (*Id.* ¶¶ 21-22.) The 2012 Settlement Agreement specifically listed the patents and patent applications contained within each respective portfolio. (*Id.* ¶ 22.)

Second, and relevant here, Section 3(A) of the 2012 Settlement Agreement granted to CSI "a worldwide, royalty-free, paid-up, irrevocable exclusive right and license under the Nadirashvili Patent Portfolio to make, have made, use, offer to sell, sell and import rotational atherectomy devices or methods utilizing Solid Counterweights." (Hall Decl. in Support of Petrucci's Motion to Dismiss [Doc. No. 18] Ex. 1 § 3(A) (hereafter, "2012 Settlement Agreement").) Similarly, under Section 3(B) of the 2012 Settlement Agreement, CSI granted to Nadirashvili an "exclusive right and license" under the CSI Patent Portfolio, with regard to atherectomy devices or methods utilizing fluid inflatable counterweight technology. (2012 Settlement Agreement § 3(B).)

In related litigation, *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, No. 18-CV-1253 (SRN/KMM), 2020 U.S. Dist. LEXIS 204120 (D. Minn. Nov. 2, 2020), CSI vigorously disputed precisely what Nadirashvili granted to CSI by way of Section 3(A) of the 2012 Settlement Agreement. CSI contended that it was the understanding of all the parties, at the time of the 2012 Settlement Agreement, that CSI had acquired two separate rights through its "exclusive right and license": (1) an exclusive right to manufacture and sell rotational atherectomy devices utilizing solid counterweight technology in the medical device marketplace; and (2) an exclusive license under the patents in the Nadirashvili Patent Portfolio to make, have made, use, offer to sell, sell and import rotational atherectomy devices utilizing solid counterweight technology. *Id.* at *11-12. Accordingly, in CSI's view, not only did the 2012 Settlement Agreement allocate ownership of the disputed patent rights as between CSI and Nadirashvili and grant them each exclusive licenses, it went further—it set forth a broad restrictive covenant dividing the entire

4

marketplace of such devices without regard to patent rights. (Compl. ¶ 23.) In other words, CSI believed and understood that the 2012 Settlement Agreement granted it an exclusive right in the medical device marketplace to manufacture and sell atherectomy devices utilizing solid counterweight technology. (*Id.*)

Third, Section 10 of the 2012 Settlement Agreement provided that:

The rights, obligations and privileges granted to the parties in this Settlement Agreement are personal to the parties and may not be assigned or otherwise transferred by a party without the written consent of the other party. The preceding sentence notwithstanding, either party may assign, without the consent of the other party, this Settlement Agreement and the rights, obligation and privileges herein in conjunction with a sale or transfer of the respective party's Patent Portfolio to a third party who has agreed, in writing promptly delivered to the other party, to be bound to this Agreement as if it were a party.

(2012 Settlement Agreement § 10.) CSI alleges that Section 10 prohibited Nadirashvili from assigning the Nadirashvili Patent Portfolio to any party, including Petrucci and/or Cardio Flow, unless that assignee agreed in writing to be bound by the terms of the 2012 Settlement Agreement as if they were a party to that agreement. (Compl. ¶ 24.)

After the 2012 Settlement Agreement was finalized, it is alleged that Petrucci drew up an agreement allowing for the assignment of the Nadirashvili Patent Portfolio by Nadirashvili to Cardio Flow. (*Id.* ¶ 26.) CSI alleges that, when that assignment agreement was finally executed, Cardio Flow did not agree in writing to be bound by the terms of the 2012 Settlement Agreement. (*Id.*) CSI further alleges that it was not aware of the terms of the assignment agreement until 2019, through discovery in a related action. (*Id.* ¶ 29.)

With this understanding of the rights accorded to CSI under the 2012 Settlement Agreement, CSI now alleges, in this action, that Petrucci always intended to ignore those exclusive rights, even as he was directing his attorneys to agree to the terms of the 2012 Settlement Agreement on Nadirashvili's behalf. (*Id.*) CSI further alleges that Petrucci and Nadirashvili appeared to abide by that mutual understanding of the division of exclusive rights in the marketplace before 2016, by focusing their efforts on an atherectomy device utilizing fluid inflatable counterweight technology. (*Id.* ¶ 31.) However, in 2016, when Cardio Flow began developing an atherectomy device that utilized solid counterweight technology—the FreedomFlow device—CSI alleges that Nadirashvili breached Section 3(A) of the 2012 Settlement Agreement as to CSI's alleged exclusive right to develop any atherectomy device utilizing solid counterweight technology. (*Id.* ¶¶ 31-32.) And CSI alleges that Nadirashvili breached Section 10 of the 2012 Settlement Agreement by failing to obtain, in writing, an agreement by Cardio Flow to be bound to the terms of the 2012 Settlement Agreement. (*Id.* ¶ 26.)

Although CSI no doubt believes that it was granted exclusive rights in the marketplace, over and above its exclusive license, under the 2012 Settlement Agreement, this Court has already ruled to the contrary. *See Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, No. 18-CV-1253 (SRN/KMM), 2020 U.S. Dist. LEXIS 204120, at *12-13 (D. Minn. Nov. 2, 2020). As this Court explained in *Cardio Flow*, Section 3(A) of the 2012 Settlement Agreement grants to CSI only an "exclusive license to certain patent rights under the Nadirashvili Patent Portfolio." *Id.* at *13. Courts have long understood that a grant of an "exclusive right and license" only creates one obligation in the context of a patent license.

*Id.* at \*12. After all, Nadirashvili could not grant CSI greater rights than she had in the first instance—she could not grant CSI more than an exclusive license to the patents in her patent portfolio. *See id.* at \*20. However, this Court has also ruled that the exclusive license granted to CSI under the 2012 Settlement Agreement "ran with the patents" and remained enforceable even after the assignment of the Nadirashvili Patent Portfolio to Cardio Flow. *Id.* at \*24-25.

Against this backdrop, CSI's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contract, fraud and a request for a permanent injunction come into clearer focus. Through this lawsuit, CSI seeks to hold Nadirashvili accountable for violating its alleged exclusive right to the marketplace of atherectomy devices utilizing solid counterweight technology by assigning those rights to Cardio Flow, without its written agreement to be bound to the terms of the 2012 Settlement Agreement. But, as this Court has already ruled, CSI never acquired such rights under the 2012 Settlement Agreement. *Id.* at \*12-13. CSI did acquire an exclusive license however—a license that "ran with the patents." *Id.* at \*24-25. Thus, to the extent that Nadirashvili or Petrucci or any third party has infringed, or infringes in the future, the patents that are subject to that exclusive license, CSI is free to sue them for patent infringement. *See id.* at \*26.

## II.   DISCUSSION

### A. Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in

the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). The Court, however, need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that plaintiffs draw from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Courts may, however, "consider some materials that are part of the public record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings." *Id.* (quotations and citation omitted); *see also Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) ("In addressing a motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." (quotation omitted)).

"[D]ocuments 'necessarily embraced by the complaint' are not matters outside the pleading," *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004), and courts have discretion "to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (quotation omitted). Indeed, "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Stahl*, 327 F.3d at 700.[1]

Claims of fraud must be pled with particularity. Fed. R. Civ. P. 9(b). In order to provide the notice required under Rule 9(b), a plaintiff must plead "the who, what, when, where, and how" of the alleged fraud. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy [Rule 9(b)]." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citation omitted).

## B. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

CSI first alleges that Nadirashvili breached Section 10 of the 2012 Settlement Agreement by assigning the Nadirashvili Patent Portfolio to Cardio Flow in 2012 without obtaining CSI's written consent to be bound by the terms of the 2012 Settlement Agreement. (Compl. ¶ 36.) CSI next alleges that, in 2016, Nadirashvili breached Section 3(A) of the 2012 Settlement Agreement by failing to prevent Cardio Flow from developing

---

[1] Accordingly, the Court considers the 2012 Settlement Agreement as embraced by the pleadings in deciding these motions to dismiss.

atherectomy devices utilizing solid counterweight technology. (*Id.* ¶ 37.) Finally, citing to the same alleged actionable conduct, CSI claims that Nadirashvili breached the implied covenant of good faith and fair dealing as well. (*Id.* ¶ 43.)

As explained below, CSI's claims for breach of contract and breach of the implied covenant of good faith and fair dealing must be dismissed. The Court finds that CSI fails to state a claim for breach of contract and breach of the implied covenant of good faith and fair dealing as to its claim that, in 2016, Nadirashvili breached Section 3(A) of the 2012 Settlement Agreement. And the Court finds that the six-year statute of limitations bars CSI's claims as to both breach of contract and breach of the implied covenant of good faith and fair dealing as to its claim that, in 2012, Nadirashvili breached Section 10 of the 2012 Settlement Agreement.

### 1.      Failure to State a Claim

First, the Court considers CSI's claim that Nadirashvili breached Section 3(A) of the 2012 Settlement Agreement when, in 2016, she failed "to prevent Cardio Flow" from developing an atherectomy device utilizing solid counterweight technology "exclusively reserved to CSI." (Compl. ¶ 37.) As discussed, *supra*, this claim is based on CSI's misunderstanding that Section 3(A) granted to it an "exclusive right" in the marketplace to develop and sell such medical devices, without regard to patent rights. As this Court has already ruled in *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, No. 18-CV-1253 (SRN/KMM), 2020 U.S. Dist. LEXIS 204120, at *12-13 (D. Minn. Nov. 2, 2020), Section 3(A) grants to CSI merely an exclusive license to certain patent rights under the Nadirashvili Patent Portfolio.

In order to plausibly allege a breach of contract as to the exclusive license granted under Section 3(A), CSI would need to identify: (1) a particular patent or patents in the Nadirashvili Patent Portfolio that were licensed to CSI; and (2) that the accused product—the FreedomFlow device—infringes every element of at least one of the patent's claims. *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018); *Larson v. SoundSkins Glob.*, No. 18-cv-3190 (WMW/LIB), 2019 U.S. Dist. LEXIS 138219, at *8 (D. Minn. Aug. 15, 2019). Neither such allegation appears in the Complaint.

Likewise, CSI fails to state a claim for breach of the implied covenant of good faith and fair dealing as to Cardio Flow's development of the FreedomFlow device. Under Minnesota law, all contracts other than sales and employment contracts include an implied covenant of good faith and fair dealing requiring that one party not unjustifiably hinder the other party's performance of the contract. *Kivel v. WealthSpring Mortg. Corp.*, 398 F. Supp. 2d 1049, 1057 (D. Minn. 2005) (citations omitted). "[T]he implied covenant of good faith and fair dealing governs the parties' performance and prohibits a party from failing to perform for the purpose of thwarting the other party's rights under the contract." *Team Nursing Servs., Inc. v. Evangelical Luthern Good Samaritan Soc.*, 433 F.3d 637, 641-42 (8th Cir. 2006). "Examples of breach of the duty of good faith and fair dealing by unjustified hindrance include wrongfully repudiating a contract, avoid[ing] performance by affirmatively blocking the happening of a condition precedent, refusing to allow a party to perform unless the performing party waived other contractual rights, and using a party's rejection of an offer as a defense to contract liability when the defendant persuaded the party to reject the offer in the first place." *Cox v. Mortg. Elec. Registration Sys.*, 685 F.3d

663, 671 (8th Cir. 2012) (internal quotations and citations omitted). Minnesota law requires a claim for breach of the duty of good faith and fair dealing to allege a causal link between the alleged breach and the party's claimed damages. *Id.*

CSI argues that Nadirashvili breached the implied covenant of good faith and fair dealing by "contributing to Mr. Petrucci's fraudulent scheme to attempt to deprive CSI of its exclusive rights and licenses to the Nadirashvili Patent Portfolio" and by "assisting Cardio Flow develop an atherectomy device based on the Solid Counterweight technology that was exclusively reserved to CSI, thereby depriving CSI of the benefits it was intended to receive under the agreement." (Compl. ¶ 43.) Like CSI's breach of contract claim, these allegations are based on CSI's mistaken belief that it owns an "exclusive right" in the marketplace to solid counterweight technology. Accordingly, these allegations cannot survive Nadirashvili's motion to dismiss.

Therefore, CSI's claims of breach of contract and breach of the implied covenant of good faith and fair dealing, with regard to the development of the FreedomFlow device in 2016 by Cardio Flow, are dismissed for failure to state a claim.

### 2.      Statute of Limitations

Next, the Court considers CSI's claims of breach of contract and breach of the implied covenant of good faith and fair dealing as to its allegation that Nadirashvili breached Section 10 of the 2012 Settlement Agreement by assigning the Nadirashvili Patent Portfolio to Cardio Flow in 2012 without obtaining CSI's written consent to be bound by the terms of the 2012 Settlement Agreement. (Compl. ¶ 36.) Nadirashvili contends that the statute of limitations bars these claims.

"An assertion that the statute of limitations bars a cause of action is an affirmative defense and 'the party asserting the defense has the burden of establishing each of the elements.'" *Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 326 (Minn. 2019) (quoting *MacRae v. Grp. Health Plan, Inc.*, 753 N.W.2d 711, 716 (Minn. 2008)). "In that context, a motion to dismiss should be granted only when it is clear from the stated allegations in the complaint that the statute of limitations has run." *Id.* Indeed, "[a]s a general rule, 'the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense.'" *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011) (quoting *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008)).

The statute of limitations starts to run when a cause of action accrues, meaning the "the point in time when a plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted." *Sec. Bank & Tr. Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 916 N.W.2d 491, 496 (Minn. 2018) (citation omitted) (internal quotation marks omitted). As a result, "[a]ccrual of a cause of action requires the existence of operative facts supporting each element of the claim." *Id.*

CSI and Nadirashvili agree that the claims of breach of contract and breach of the implied covenant of good faith and fair dealing are subject to a six-year statute of limitations. *See* Minn. Stat. § 541.05, subd. 1(1). The parties, however, disagree as to when the causes of action accrued.

Nadirashvili argues that CSI's claims accrued in 2012 when Nadirashvili executed the assignment of the Nadirashvili Patent Portfolio to Cardio Flow, which renders CSI's

claims time-barred. CSI contends that the statute of limitations has not run for the following reasons: (1) the claims accrued in 2019 when CSI discovered the facts supporting its claims in the discovery CSI obtained in *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, No. 18-CV-1253 (D. Minn.); (2) the 2012 Settlement Agreement did not specify a deadline by which Cardio Flow had to accept the terms of the 2012 Settlement Agreement, so when this obligation became due is a question of fact; (3) Nadirashvili's and Petrucci's conduct equitably tolled the statute of limitations under the doctrine of fraudulent concealment; and (4) a cause of action could only accrue when CSI suffered damages, which occurred in 2016 when Cardio Flow began developing an atherectomy device utilizing solid counterweight technology. (*See* CSI Mem. in Op. to Nadirashvili Motion to Dismiss [Doc. No. 27] at 2-5.)

Under Minnesota law, the statute of limitations for a breach of contract claim begins to run when the breach occurs. *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 832, 834 (Minn. 2011). The Court, therefore, finds that CSI's claim that Nadirashvili breached Section 10 of the 2012 Settlement Agreement in 2012 is time-barred. First, although in cases alleging negligence, trespass, or fraud, the "discovery rule" may apply to toll the statute of limitations until the parties discover facts underlying those claims, *Hempel v. Creek House Tr.*, 743 N.W.2d 305, 312 (Minn. Ct. App. 2007), Minnesota courts do not apply the "discovery rule" to contract claims. *Jacobson v. Bd. of Trs.*, 627 N.W.2d 106, 110 (Minn. Ct. App. 2001); *see Untiedt's Vegetable Farm, Inc. v. S. Impact, LLC*, No. 20-CV-0597 (PJS/DTS), 2020 U.S. Dist. LEXIS 186562, at *7 n.6 (D. Minn. Oct. 8, 2020) ("Minnesota applies the occurrence rule, not the discovery rule, in determining when a

claim for breach of contract accrues."). Accordingly, the "discovery rule" does not toll the statute of limitations as to either CSI's breach of contract claim nor its claim for breach of the implied covenant of good faith and fair dealing.

Second, CSI's argument that the language of Section 10 of the 2012 Settlement Agreement is silent as to the timing of a party's consent to be bound by the agreement is belied by the very language therein. Section 10 plainly states that a party may assign the 2012 Settlement Agreement "in conjunction with a sale or transfer … to a third party *who has agreed*" in writing to be bound by the 2012 Settlement Agreement. (*See* 2012 Settlement Agreement § 10 (emphasis added).) While the Court acknowledges that the parties dispute, in the first instance, whether Section 10 required Nadirashvili to obtain Cardio Flow's agreement to be bound by the 2012 Settlement Agreement, even if it did, it required Nadirashvili to obtain Cardio Flow's agreement in conjunction with the sale of the Nadirashvili Patent Portfolio to Cardio Flow. Therefore, such a breach, if any, occurred in November 2012, when Nadirashvili assigned the Nadirashvili Patent Portfolio to Cardio Flow. (*See* Compl. ¶ 26.) Accordingly, because CSI initiated this lawsuit more than six years after November 2012, CSI's claim that Nadirashvili breached Section 10 of the 2012 Settlement Agreement is barred by the statute of limitations.

Third, the doctrine of fraudulent concealment does not save CSI's claims for breach of contract or breach of the implied covenant of good faith and fair dealing. "Fraudulent concealment tolls the statute of limitations until the party discovers, or has a reasonable opportunity to discover, the concealed defect." *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 918 (Minn. 1990) (citation omitted). "However, it does so only if it is the

very existence of the facts which establish the cause of action which are fraudulently concealed." *Id.* Indeed, "[t]he defending party must have taken affirmative acts intended to, and successful in, preventing discovery of the cause of action." *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 711 (8th Cir. 2016) (applying Minnesota law).

Here, the Complaint does not plausibly allege that Nadirashvili took any affirmative acts to fraudulently conceal that she had assigned the Nadirashvili Patent Portfolio to Cardio Flow in 2012, without obtaining Cardio Flow's agreement to be bound by the terms of the 2012 Settlement Agreement. At most, the Complaint asserts wholly conclusory allegations, primarily as to Nadirashvili's state of mind, without any factual support, referencing generally her "intentional efforts to keep that information secret" and alleging that she "conceal[ed] Defendants' schemes and breaches." (*See* Compl. ¶¶ 29, 43.) Such threadbare allegations are insufficient to plausibly allege fraudulent concealment. Therefore, these conclusory allegations of fraudulent concealment do not preclude dismissal of CSI's claim. CSI's claims for breach of contract and breach of the implied covenant of good faith and fair dealing as to Nadirashvili's alleged breach of Section 10 of the 2012 Settlement Agreement are barred by the statute of limitations.

Finally, CSI's argument that its claims could only accrue when it suffered damages is contrary to Minnesota law. Under Minnesota law, it has long been established that a claim of breach of contract accrues upon the breach, even though damages are incurred at a later date. *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 710 (8th Cir. 2016); *Untiedt's Vegetable Farm, Inc. v. S. Impact, LLC*, No. 20-CV-0597 (PJS/DTS), 2020 U.S. Dist. LEXIS 186562, at *7 (D. Minn. Oct. 8, 2020); *see Bachertz v. Hayes-Lucas Lumber*

16

*Co.*, 275 N.W. 694, 697 (Minn. 1937). The Court applies the same statute of limitations analysis to claims for breach of the implied covenant of good faith and fair dealing. *See Int'l Decision Sys., Inc. v. JDR Sols., Inc.*, No. 18-cv-02951 (ECT/DTS), 2019 U.S. Dist. LEXIS 76974, at *6 n.3 (D. Minn. May 7, 2019). Therefore, it is of no consequence that CSI allegedly did not suffer damages until 2016 because the date that it suffered damages is not relevant to the statute of limitations analysis. CSI's claims accrued upon the alleged breach, which occurred in 2012 and renders the claims time-barred.

Accordingly, under Rule 12(b)(6) and by operation of the statute of limitations, CSI's claims for breach of contract and breach of the implied covenant of good faith and fair dealing are dismissed.

## C. Tortious Interference with Contract

CSI next alleges that Petrucci tortiously interfered with the 2012 Settlement Agreement in four ways: (1) "by designing the scheme that fraudulently induced CSI to enter the 2012 Settlement Agreement in exchange for a promise of exclusive rights and licenses to the Nadirashvili Patent Portfolio that Mr. Petrucci intended to immediately disregard"; (2) "by designing the assignment agreement between Ms. Nadirashvili and Cardio Flow that assigned the Nadirashvili Patent Portfolio to Cardio Flow without providing for CSI's exclusive rights and licenses to the same patents, as required by Section 10 of the 2012 Settlement Agreement"; (3) "by directing Cardio Flow engineers to switch their development efforts away from Fluid Inflatable Counterweights and begin developing an atherectomy device using Solid Counterweights in violation of the exclusive rights and licenses reserved to CSI under the 2012 Settlement Agreement"; and (4) "by fraudulently

concealing his material involvement in the foregoing breaches until his sworn deposition in December 2019." (*See* Compl. ¶¶ 48-51.) As explained below, the Court finds that CSI fails to state a claim as to all four alleged bases of tortious interference, and additionally, two of the bases are barred by the statute of limitations.

## 1.   Failure to State a Claim

A tortious interference with contract claim has five elements: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998) (quoting *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994)).

CSI fails to plausibly allege that Petrucci intentionally procured a breach of the 2012 Settlement Agreement—that is, intentionally caused Nadirashvili to breach the 2012 Settlement Agreement—for the very same reasons that the Court holds that CSI fails to plausibly allege that Nadirashvili in fact breached the 2012 Settlement Agreement. CSI's claims are again based on the false premise that Section 3(A) of the 2012 Settlement Agreement granted it the exclusive right to develop atherectomy devices utilizing solid counterweight technology and that Cardio Flow's development of an atherectomy device, allegedly utilizing solid counterweight technology, deprived CSI of those exclusive rights in the medical device marketplace.

Accordingly, CSI fails to state a claim for tortious interference with contract.

Additionally, two of the alleged bases of tortious interference are properly subject to dismissal based on the statute of limitations, and the Court now turns to that analysis. (*See* Compl. ¶¶ 48-49.)

## 2.      Statute of Limitations

CSI and Petrucci agree that the tortious interference with contract claim is subject to a six-year statute of limitations. *See* Minn. Stat. § 541.05. The parties, however, disagree as to when this cause of action accrued. Petrucci argues that the claim accrued in 2012 when Nadirashvili executed the assignment of the Nadirashvili Patent Portfolio to Cardio Flow. CSI argues that the claim accrued in either 2016 or 2019. First, under the "discovery rule," CSI argues that its claims against Petrucci accrued in 2019 when the facts supporting its claims were first revealed in discovery in *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, No. 18-CV-1253 (D. Minn.). Alternatively, CSI argues that its claims against Petrucci accrued in 2016, when Cardio Flow first developed an atherectomy device utilizing solid counterweight technology, allegedly in violation of CSI's exclusive rights under the 2012 Settlement Agreement, causing CSI to incur damages. (*See* CSI Mem. in Op. to Petrucci's Motion to Dismiss [Doc. No. 20] at 15-16.) CSI further maintains that Petrucci's fraudulent concealment of his scheme to deprive CSI of these exclusive rights should toll the statute of limitations until 2019, when his fraud came to light in discovery. (*Id.* at 18-20.)

Tortious interference with contract claims "are governed by the six-year statute of limitations for contract claims." *Wallin v. Minn. Dep't of Corr.*, 598 N.W.2d 393, 401 (Minn. Ct. App. 1999). Contrary to CSI's argument, the "discovery rule" does not apply to tortious interference with contract claims; it only applies to claims of negligence, trespass,

and fraud. *See Dalton v. Dow Chem. Co.*, 158 N.W.2d 580, 584 (Minn. 1968) ("ignorance of a cause of action not involving continuing negligence or trespass, or fraud on the part of the defendant, does not toll the accrual of a cause of action").

The Court finds that the statute of limitations bars two of CSI's claims for tortious interference. CSI alleges that Petrucci tortiously interfered with the 2012 Settlement Agreement "by designing the scheme that fraudulently induced CSI to enter the 2012 Settlement Agreement in exchange for a promise of exclusive rights and licenses to the Nadirashvili Patent Portfolio that Mr. Petrucci intended to immediately disregard" and "by designing the assignment agreement between Ms. Nadirashvili and Cardio Flow that assigned the Nadirashvili Patent Portfolio to Cardio Flow without providing for CSI's exclusive rights and licenses, as required by Section 10 of the 2012 Settlement Agreement." (Compl. ¶¶ 48-49.) Because these events occurred more than six years before CSI initiated this lawsuit, the statute of limitations bars these claims.

Moreover, the doctrine of fraudulent concealment fails to save CSI's claims of tortious interference with contract. As discussed, *supra*, CSI must plausibly allege facts to support its claim that Petrucci took "affirmative acts intended to, and successful in, preventing discovery of the cause of action." *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 711 (8th Cir. 2016). No such allegations appear in this Complaint. The Complaint's threadbare allegations regarding Petrucci's alleged state of mind, without any factual support, are insufficient to plausibly allege fraudulent concealment.

Accordingly, because CSI's claim for tortious interference with contract fails to state a claim under Rule 12(b)(6) and is barred by operation of the statute of limitations, the claim must be dismissed.

### D. Fraud

CSI alleges that Nadirashvili and Petrucci engaged in fraud, both at the time CSI and Nadirashvili executed the 2012 Settlement Agreement and at the time Nadirashvili assigned certain patents under the Nadirashvili Patent Portfolio to Cardio Flow in 2012. (*See* Compl. ¶¶ 56-57.)

To prove fraud, a party must show that: "(1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance." *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986). To comply with the particularity requirement Rule 9(b), a plaintiff must plead "the who, what, when, where, and how" of the alleged fraud. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).

CSI first alleges that Nadirashvili and Petrucci worked together to fraudulently induce CSI to enter into the 2012 Settlement Agreement—an agreement that allegedly granted CSI exclusive rights to develop an atherectomy device utilizing solid counterweight technology in the medical device marketplace. (Compl. ¶ 56.) According to CSI, Petrucci contributed to this scheme by masterminding the plan and engaging lawyers

21

to carry it out. (*Id.*) Second, CSI alleges that Nadirashvili and Petrucci fraudulently entered into an assignment agreement in 2012, specifically designed to deprive CSI of those very rights. (*Id.*)

The Court first addresses CSI's fraud claim against Petrucci and then turns to the fraud claim against Nadirashvili.

### 1.  Fraud Claim Against Petrucci

Petrucci argues that CSI's fraud claim against him must be dismissed because CSI fails to allege that Petrucci made any "misrepresentation of any past or present material fact," fails to allege that CSI relied on any such misrepresentation, and otherwise fails to plead fraud with particularity as it must under Rule 9(b). (Petrucci Mem. in Support of Motion to Dismiss [Doc. No. 17] at 23-25.)

In response, CSI contends that it does adequately plead fraud with particularity, citing to its allegations as to the concerted actions of Nadirashvili and Petrucci to deprive CSI of its exclusive rights under the 2012 Settlement Agreement. (CSI Mem. in Op. to Petrucci's Motion to Dismiss [Doc. No. 20] at 25; *see* Compl. ¶ 56.) Again, CSI's fraud claims are entirely based on the fundamentally flawed premise that Section 3(A) of the 2012 Settlement Agreement accorded it exclusive rights to this technology, without regard to patent rights. The Complaint simply fails to allege any misrepresentation of material fact, no less CSI's reliance on such a misrepresentation. Instead, the Complaint is replete with conclusory allegations as to the fraudulent state of mind of Nadirashvili and Petrucci without any factual support for such allegations.

### 2.     Fraud Claim Against Nadirashvili

Similarly, Nadirashvili contends that CSI's fraud claim must be dismissed because CSI fails to allege that Nadirashvili made any "misrepresentation of any past or present material fact," fails to allege that CSI relied on any such misrepresentation, and otherwise fails to plead fraud with particularity as it must under Rule 9(b). (Nadirashvili Mem. in Support of Motion to Dismiss [Doc. No. 24] at 2, 4 (adopting arguments in Petrucci's memorandum of law).)

In response, CSI similarly contends that it does adequately plead fraud with particularity, relying again on the false premise that it was accorded exclusive rights to the marketplace of atherectomy devices utilizing solid counterweight technology that this Court has previously ruled is not the case. Similarly, the Complaint fails to allege that Nadirashvili made any misrepresentation of material fact to CSI nor does it allege that CSI relied on such a misrepresentation. Instead, the Complaint asserts only conclusory allegations, without any factual support, that are inadequate to plead fraud with the requisite particularity.

Accordingly, CSI's claims of fraud against Petrucci and Nadirashvili fail to state a claim under Rule 12(b)(6) and fail to allege fraud with particularity under Rule 9(b). Accordingly, they must be dismissed.

## III.   CONCLUSION

Based on the foregoing, and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Petrucci's Motion to Dismiss [Doc. No. 15] is **GRANTED**;

2. Defendant Nadirashvili's Motion to Dismiss [Doc. No. 22] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 1, 2020
                                        s/Susan Richard Nelson
                                          SUSAN RICHARD NELSON
                                          United States District Judge