# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Cardiovascular Systems, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Gary Petrucci and Lela Nadirashvili, <br><br> Defendants. | Case No. 20-cv-01043 (SRN/KMM) <br><br><br> **ORDER** |

Daniel Lewis Allender, Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067-3208; and Roman M. Silberfeld and Thomas F. Berndt, Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for Plaintiff.

Daniel R. Hall and Joseph W. Anthony, Anthony Ostlund Baer & Louwagie PA, 90 South Seventh Street, Suite 3600, Minneapolis, MN 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Vacate Judgment, Reopen the Case, and Grant Leave to Amend the Complaint [Doc. No. 62] filed by Plaintiff Cardiovascular Systems, Inc. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **DENIES** the motion.

**I.    BACKGROUND**

The factual background of this matter is fully set out in this Court's December 1, 2020 Memorandum Opinion and Order [Doc. No. 60] granting Defendants' Motions to Dismiss, and that Order is herein incorporated by reference. The Court will refer only to those background facts necessary to address the instant motion.

1

This litigation arises from a dispute concerning intellectual property rights in orbital atherectomy devices. In 2012, Plaintiff Cardiovascular Systems, Inc. ("CSI") and Defendant Lela Nadirashvili entered into a settlement agreement, whereby the parties allocated their rights to certain patents and patent applications. As relevant here, in Section 3(A) of the agreement, Nadirashvili granted CSI "a worldwide, royalty-free, paid-up, irrevocable exclusive right and license under the Nadirashvili Patent Portfolio to make, have made, use, offer to sell, sell and import rotational atherectomy devices or methods utilizing Solid Counterweights." (Decl. of Daniel R. Hall [Doc. No. 18], Ex. 1, § 3(A) (hereafter, "2012 Settlement Agreement").) And in Section 10, the 2012 Settlement Agreement provided that:

> The rights, obligations and privileges granted to the parties in this Settlement Agreement are personal to the parties and may not be assigned or otherwise transferred by a party without the written consent of the other party. The preceding sentence notwithstanding, either party may assign, without the consent of the other party, this Settlement Agreement and the rights, obligation and privileges herein in conjunction with a sale or transfer of the respective party's Patent Portfolio to a third party who has agreed, in writing promptly delivered to the other party, to be bound to this Agreement as if it were a party.

(*Id.* § 10.)

Following the 2012 settlement, Defendant Gary Petrucci allegedly drew up an agreement assigning Nadirashvili's rights to the Nadirashvili Patent Portfolio to Cardio Flow, Inc., a competing medical device company. (Compl. [Doc. No. 1], at ¶ 26.) When Nadirashvili executed that assignment agreement, she did not obtain CSI's consent, and Cardio Flow did not agree to be bound by the 2012 Settlement Agreement. (*Id.*) In 2016,

Cardio Flow allegedly developed an atherectomy device (the "FreedomFlow" device) utilizing technologies licensed to CSI under the 2012 Settlement Agreement. (*Id.* ¶ 31.)

In this action, CSI alleges that Section 3(A) of the 2012 Settlement Agreement provided it both an exclusive license to the Nadirashvili Patent Portfolio and an exclusive right to develop atherectomy devices utilizing solid counterweight technology. (*Id.* ¶ 32.) It is alleged that when Cardio Flow developed the FreedomFlow device, Nadirashvili breached her obligation under the 2012 Settlement Agreement "to ensure that Solid Counterweights were exclusively reserved for CSI's use." (*Id.*) Moreover, CSI alleges that Nadirashvili breached Section 10 of the agreement by assigning her rights to Cardio Flow without requiring Cardio Flow to agree to be bound by the 2012 Settlement Agreement. (*Id.* ¶ 36.) CSI asserts claims against Nadirashvili for breach of Sections 3(A) and 10 of the 2012 Settlement Agreement and breach of the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 34-44.) In addition, CSI alleges that Petrucci tortiously interfered with the 2012 Settlement Agreement by procuring Nadirashvili's breach, and that both Nadirashvili and Petrucci are liable for fraud. (*Id.* ¶¶ 45-61.)

In a related lawsuit between CSI and Cardio Flow, this Court held that Section 3(A) of the 2012 Settlement Agreement did not give CSI an exclusive right to practice solid counterweight technology—rather, Section 3(A) granted to CSI only "an exclusive license to certain patent rights under the Nadirashvili Patent Portfolio." *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, No. 18-CV-1253 (SRN/KMM), 2020 WL 6434619, at *5 (D. Minn. Nov. 2, 2020). The Court also held that the exclusive license was not extinguished by Nadirashvili's assignment to Cardio Flow, but instead "ran with the patents." *Id.* at *8.

3

In its December 1, 2020 Memorandum Opinion and Order, this Court granted Nadirashvili and Petrucci's motions to dismiss CSI's claims against them for failure to state a claim. With respect to CSI's breach of contract claim, the Court reasoned that, consistent with its Order in the *Cardio Flow* case, Section 3(A) did not provide an exclusive right to practice solid counterweight technology and therefore the Complaint does not state a claim for breach of such a right. (Mem. Op. & Order ("Dec. 2020 Order") [Doc. No. 60], at 10.) Further, the Court found that the Complaint does not state a claim for breach of Section 3(A)'s exclusive license, either:

> In order to plausibly allege a breach of contract as to the exclusive license granted under Section 3(A), CSI would need to identify: (1) a particular patent or patents in the Nadirashvili Patent Portfolio that were licensed to CSI; and (2) that the accused product—the FreedomFlow device—infringes every element of at least one of the patent's claims. Neither such allegation appears in the Complaint.

(*Id.* at 11 (citations omitted).) The Court also found that CSI's claim that Nadirashvili breached Section 10 when assigning her rights to Cardio Flow is time-barred. (*Id.* at 12-17.) With respect to CSI's bad faith claim, the Court reasoned that CSI's claim is "based on CSI's mistaken belief that it owns an 'exclusive right' in the marketplace to solid counterweight technology." (*Id.* at 12.) And because the Court found that CSI did not state a claim for breach of contract, the Court dismissed CSI's claims for tortious interference with contract as well.[1] (*Id.* at 18.) Finally, the Court dismissed CSI's fraud claims because

---

[1] The Court also found that two of the alleged bases for tortious interference with contract were time-barred. (*See id.* at 19-21.)

4

it found that CSI did not allege fraud with the particularity required by Federal Rule of Civil Procedure 9(b). (*Id.* at 21-23.)

Having found that CSI failed to state a claim upon which relief may be granted, the Court dismissed the Complaint and entered judgment. Subsequently, CSI moved to vacate that judgment and for leave to file an amended complaint, which identifies several patents allegedly infringed by the FreedomFlow device and explains CSI's infringement theories—an apparent response to the Court's conclusion that CSI failed to state a claim for breach of its exclusive license because it did not identify particular patents licensed to CSI and did not allege how the FreedomFlow device infringed such patents. (*See generally* Prop. Am. Compl. [Doc. No. 65].) Notably, CSI had argued in its opposition to the motions to dismiss that the Complaint adequately pleads breach of the exclusive license provision, but "[t]o the extent that the Court believes additional allegations are necessary," CSI requested "leave to amend the complaint to identify the specific patents and claims at issue." (Mem. in Opp'n to Mot. to Dismiss [Doc. No. 20], at 26-27.) CSI did not, however, file a motion for leave to amend or submit its Proposed Amended Complaint until after the Court ruled on the motions to dismiss and entered judgment. Consequently, CSI now moves to vacate the judgment under Federal Rules of Civil Procedure 59(e) and 60(b). CSI does not ask the Court to revisit its rulings on any of CSI's claims, except for its claim that Nadirashvili breached the exclusive license provision in Section 3(A) of the 2012 Settlement Agreement.

## II.  DISCUSSION

### A.  Standard of Review

At the outset, the Court must determine the applicable standard of review. Although CSI moved for leave to amend the Complaint after the Court entered judgment, CSI contends that the liberal standards of Federal Rule of Civil Procedure 15(a), rather than the more stringent standards of Rules 59(e) and 60(b), apply. CSI argues that it had requested leave to amend in order to identify the patents at issue in its motion papers, and that "[b]ecause the Court entered judgment immediately after ruling on the motions to dismiss, CSI did not have an opportunity to file a motion for leave to file an amended complaint under the routine procedures of Rule 15(a)." (Mem. in Supp. of Mot. to Amend [Doc. No. 64], at 9.)

But, as the Eighth Circuit has reasoned,

> whatever may be "typical" in other jurisdictions, Eighth Circuit law has long been to the contrary. In *Wolgin v. Simon*, for example, where plaintiff requested leave to amend if the court granted defendants' motion to dismiss, we held "that to preserve the right to amend a complaint a party must submit a proposed amendment along with its motion." 722 F.2d 389, 395 (8th Cir. 1983). Later decisions have stated, logically, that a district court in granting a motion to dismiss is not obliged to invite a motion for leave to amend if plaintiff did not file one.

*United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 742 (8th Cir. 2014) (citations omitted). Consequently, CSI's statement in its motion papers that it was willing to file an amended complaint to identify the patents at issue and describe how the FreedomFlow device allegedly infringed those patents—without filing its proposed amendments or a

6

motion for leave to amend—was insufficient to preserve CSI's right to seek leave to amend under the liberal standards of Rule 15(a).

Instead, the Court must analyze CSI's post-judgment Motion for Leave to Amend under the rubric of Rules 59(e) and 60(b). "'[D]istrict courts in this circuit have considerable discretion to deny a [timely] post judgment motion for leave to amend because such motions are disfavored, but may not ignore the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits.'" *Id.* at 742–43 (quoting *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 823–24 (8th Cir. 2009)) (alteration in original). A post-judgment motion for leave to amend "will be granted if it is consistent with the stringent standards governing the grant of Rule 59(e) and Rule 60(b) relief." *Id.* at 743 (citations omitted); *see Roop*, 559 F.3d at 823 ("[I]nterests of finality dictate that leave to amend should be less freely available after a final order has been entered."). Thus, the Court may grant CSI's motion if it is consistent with Rules 59(e) or 60(b), and in analyzing those rules the Court must apply Rule 15(a)(2)'s preference for affording parties the opportunity to test their claims on the merits—but the Court need not apply the broader rule that leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).

### B. Analysis Under Rules 59(e) and 60(b)

Rule 59(e) "serve[s] the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence,'" and "[s]uch motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *United States v. Metro. St. Louis Sewer*

*Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (quoting *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)). CSI does not point to any "manifest errors of law or fact," or "newly discovered evidence," justifying its motion to add patent infringement allegations post-judgment. Indeed, CSI expressly does not "ask[] the Court to reconsider any of its prior rulings." (Mem. in Supp. of Mot. to Amend at 5.) Accordingly, Rule 59(e) does not support CSI's request for leave to amend the Complaint.

"A district court has discretion under Rule 60(b) to grant postjudgment leave to file an amended complaint if the motion is 'made within a reasonable time,' and the moving party shows 'exceptional circumstances' warranting 'extraordinary relief.'" *Mask of Ka-Nefer-Nefer*, 752 F.3d at 743 (first quoting Fed. R. Civ. P. 60(c)(1), then quoting *United States v. Young*, 806 F.2d 805, 806 (8th Cir. 1986)). CSI relies on Rule 60(b)(6), which permits a district court to grant relief from a judgment for "any other reason that justifies relief." Courts give Rule 60(b) "a liberal construction so as to do substantial justice." *MIF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752, 755 (8th Cir. 1996).

The Court finds that CSI has not shown "exceptional circumstances" warranting "extraordinary relief," and that justice would not be served by permitting CSI to amend the Complaint. Although CSI argues that it did not have the opportunity to amend its Complaint prior to this Court's ruling, the Court disagrees. Nadirashvili and Petrucci filed their motions to dismiss in June 2020, putting CSI on notice of its Complaint's deficiencies; yet CSI determined to stand by its Complaint, and did not seek leave to amend until six

8

months later—after this Court ruled against CSI.[2] Moreover, on November 2, 2020, the Court issued a summary judgment order in the *Cardio Flow* case rejecting CSI's contention that Section 3(A) granted CSI an exclusive right to practice solid counterweight technology. *See Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, No. 18-CV-1253 (SRN/KMM), 2020 WL 6434619, at *5 (D. Minn. Nov. 2, 2020). Thereafter, CSI made no effort to request leave to shore up its exclusive license contentions, despite ample time to do so.

CSI argues that the Court's December 1, 2020 Order did not address the merits of its claims based on the exclusive license created in Section 3(A). As CSI correctly notes, "[o]ne important equitable consideration" in considering a post-judgment motion for leave to amend under Rule 60(b) "is whether the litigants received a ruling on the merits of their claim." *MIF Realty L.P.*, 92 F.3d at 756. "There is much more reason for liberality in reopening a judgment when the merits of the case never have been considered than there is when the judgment comes after a full trial on the merits." *Id.* (quotation omitted). But insofar as CSI asserts that the Court did not consider the merits of its exclusive license claims, CSI is mistaken. After examining the 2012 Settlement Agreement and CSI's Complaint, the Court concluded that CSI did not plausibly allege patent infringement by Cardio Flow because CSI neither identified the patents Cardio Flow infringed nor

---

[2] As noted above, CSI's statement in its motion papers (filed in June and July of 2020) that it was willing to add additional allegations regarding patent infringement—without filing such proposed amendments or moving to amend—was insufficient to preserve Rule 15(a)(2)'s more favorable standards for leave to amend. *Mask of Ka-Nefer-Nefer*, 752 F.3d at 742.

explained how the FreedomFlow device infringed those patents. (*See* Dec. 2020 Order at 11.) Consequently, the Court found that CSI did not state a claim against Nadirashvili for breach of contract based on the exclusive license provision. (*Id.*) In short, the Court did consider the merits of CSI's exclusive license contentions; Rule 60(b) does not entitle CSI to take a second bite at the apple.[3] *Cf. U.S. Commodity Futures Trading Comm'n v. Kratville*, 796 F.3d 873, 896 (8th Cir. 2015) (observing that Rule 60(b)(1) "does not permit litigants and their counsel to evade the consequences of their legal positions and litigation strategies, even though these might prove unsuccessful, ill-advised, or even flatly erroneous" (quoting *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 595 (6th Cir. 2002))).

Accordingly, the Court finds that CSI has not satisfied the requirements of Rules 59(e) and 60(b), and therefore denies CSI's Motion to Vacate Judgment, Reopen the Case, and Grant Leave to Amend the Complaint.

### C.   Futility

The Court also denies CSI's motion on the additional ground that CSI's proposed amendment would be futile. The Proposed Amended Complaint—which adds references to several patents allegedly infringed by the FreedomFlow device and includes claim charts explaining CSI's infringement theories—still does not state a claim for breach of contract

---

[3] Although the Court's December 1, 2020 Order dismissed CSI's breach of contract claim premised on the exclusive license because CSI did not plausibly allege infringement, as the Court explains below, even after addressing that defect the Proposed Amended Complaint does not state a claim against Nadirashvili for breach of contract.

against Nadirashvili. A proposed amendment is futile if it could not withstand a Rule 12 motion to dismiss. *See In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007). The Court therefore applies the standard applicable under Rule 12(b)(6). Namely, the Court accepts the facts alleged in the Proposed Amended Complaint as true, and views those allegations in the light most favorable to CSI. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). Under that lens, the Proposed Amended Complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Even assuming that Cardio Flow's FreedomFlow device infringes the patents identified in the Proposed Amended Complaint, and that those patents were among those licensed to CSI under the 2012 Settlement Agreement, the Court finds that CSI has not plausibly alleged that Nadirashvili is liable for that infringement on a breach of contract theory. CSI's theory rests on the proposition that the exclusive license granted in Section 3(A) of the 2012 Settlement Agreement obligated Nadirashvili to indefinitely and proactively prevent third parties from infringing the assigned patents. (*See* Prop. Am. Compl. at ¶ 48 ("Beginning in 2016, Ms. Nadirashvili again breached the settlement agreement by failing to prevent Cardio Flow from beginning its development of the Solid Counterweight technology exclusively reserved to CSI.").)

In the Court's view, no provision of the 2012 Settlement Agreement, nor any provision of law, supports reading such an expansive obligation into Section 3(A). As this Court has previously held, Section 3(A) granted CSI an exclusive license to certain patents and patent applications within the Nadirashvili Patent Portfolio, and that exclusive license

11

was not extinguished by the assignment to Cardio Flow. *See Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, No. 18-CV-1253 (SRN/KMM), 2020 WL 6434619, at *5, 8 (D. Minn. Nov. 2, 2020). It does not follow that Nadirashvili promised to prevent third parties from practicing the technologies claimed in the licensed patents by proactively suing third-party infringers. CSI places much weight on the proposition that "an exclusive license is 'a license to practice the invention . . . accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave.'" *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998) (quoting *Western Elec. Co. v. Pacent Reproducer Corp.*, 42 F.2d 116, 118 (2d Cir. 1930)). But this proposition does little more than recognize that a patentee who grants an exclusive license thereby promises not to license others to practice the patent.[4] Indeed, as the Supreme Court has recognized,

> [T]he owner of a patent, who grants [an exclusive license] to another . . . , holds the title to the patent in trust for such a licensee, to the extent that he must allow the use of his name as plaintiff in any action brought at the instance of the licensee . . . to obtain damages for the injury to his exclusive right by an infringer, or to enjoin infringement of it. Such exclusive licenses frequently contain express covenants by the patent owner and licensor to sue infringers, that expressly cast upon the former the affirmative duty of initiating and bearing the expense of the litigation. But, without such express covenants, the implied obligation of the licensor to allow the use of his name

---

[4] Notably, the quotation from *Textile Productions* that CSI relies on is immediately followed by the conclusion: "Thus, if a patentee-licensor is free to grant licenses to others, licensees under that patent are not exclusive licensees." *Id.* Consequently, the "promise that others shall be excluded" referred to by the *Textile Productions* court refers to the patentee's promise not to grant licenses to others, not a covenant to sue third-party infringers.

> is indispensable to the enjoyment by the licensee of the monopoly which by personal contract the licensor has given.

*Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 469 (1926). In other words, one primary purpose of an exclusive license is to confer standing on the exclusive licensee to directly sue infringers, in the patentee's name. Although parties to such agreements frequently include a covenant that the patentee will initiate and bear the costs of such litigation, the exclusive license does not itself embody such a covenant.

Because the exclusive license granted in Section 3(A) did not obligate Nadirashvili to prevent Cardio Flow from infringing the licensed patents, CSI cannot hold Nadirashvili liable for Cardio Flow's alleged infringement on a breach of contract theory. And because the covenant of good faith and fair dealing does not operate to create obligations not imposed by the contract, the Proposed Amended Complaint does not state a claim for breach of that covenant, either. *See Watkins Inc. v. Chilkoot Distrib., Inc.*, 719 F.3d 987, 994 (8th Cir. 2013) ("The implied covenant of good faith and fair dealing serves only to enforce existing contractual duties, and not to create new ones." (quoting *Teng Moua v. Jani–King of Minn., Inc.*, 810 F. Supp. 2d 882, 893 (D. Minn. 2011))). Finally, without a breach of the 2012 Settlement Agreement, Petrucci cannot be liable for tortious interference with that contract. (*See* Dec. 2020 Order at 18 (citing *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998).)

\* \* \*

In sum, the Court finds that CSI has not demonstrated a manifest error of law or fact, or newly discovered evidence, warranting relief from this Court's judgment under

13

Rule 59(e). Nor has CSI shown exceptional circumstances warranting relief under Rule 60(b). Moreover, the Court finds that CSI's Proposed Amended Complaint does not state a claim for breach of contract, breach of the implied covenant of good faith and fair dealing, or tortious interference with contract, and the proposed amendment would therefore be futile. Accordingly, the Court denies CSI's Motion to Vacate Judgment, Reopen the Case, and Grant Leave to Amend the Complaint.

### III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Vacate Judgment, Reopen the Case, and Grant Leave to Amend the Complaint [Doc. No. 62] is **DENIED**.

**IT IS SO ORDERED.**


Dated: March 24, 2021                                     s/Susan Richard Nelson
                                                         SUSAN RICHARD NELSON
                                                         United States District Judge